**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHERYL WALTER, CINDY BROWN, ROBIN ABSTON, individually and on behalf all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>BUFFETS, INC. d/b/a HOME TOWN BUFFETS, RYAN'S, OLD COUNTRY BUFFET, FIRE MOUNTAIN, COUNTRY BUFFET,<br><br>            Defendant. | **CLASS ACTION COMPLAINT**<br><br>**and Demand for Jury Trial** |

Plaintiffs Walter, Brown, and Abston, individually and on behalf of all others similarly situated as a class representative, by their attorneys, upon personal knowledge as to themselves and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Defendant Buffets, Inc. operates more than 400 buffet-style restaurants across the United States.  It employs Servers at each of its locations and pays them less than $4.00 per hour claiming that they are engaged in activities for which they are tipped by customers and those tips supplement Servers' wages to the minimum wage required by state and federal law.  In an effort to drive down its labor costs, Buffets, Inc. requires Servers to do a host of non-tip producing work, including washing dishes, cleaning floors, washing walls and furniture, emptying trash, preparing food, cleaning storage

areas and light fixtures, blinds and picture frames, and stocking food service stations. Servers spend more than 20% of their work time on these non-tip producing tasks and Buffets, Inc. pays them less than $4.00 per hour for the work. While federal and state wage-and-hour laws allow employers to credit tips against their obligation to pay the minimum wage for tip-producing work, the credit is not intended to allow employers to pay below the minimum wage for non-tip producing work. Not satisfied with paying $4.00 per hour for this work, Buffets, Inc. also require Servers to work for no pay at all by requiring them to clock-in and out at pre-scheduled times regardless of when they actually begin or end work.

2. By the conduct described in this Class Action Complaint, Buffets, Inc. has violated the Fair Labor Standards Act ("FLSA") and the wage-and-hour laws of Ohio by failing to pay its employees proper minimum and overtime wages. These violations arise out of Buffets, Inc.'s company-wide policies, and pattern or practice of violating wage-and-hour laws.

3. Plaintiffs Walter, Brown, and Abston bring claims under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* to recover minimum and overtime wages on behalf of themselves and similarly situated persons nationwide pursuant to the FLSA's collective action provision, 29 U.S.C. 216(b).

4. Plaintiffs also bring claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01 *et seq.* on behalf of themselves and a Rule 23(b)(3) class of Servers who worked for Buffets, Inc. in the state of Ohio.

## THE PARTIES

*Plaintiffs*

5. Plaintiff Walter's written consent to be a party to this action is attached hereto.

6. Walter resides in Columbus, Ohio.

7. Walter is employed by Buffets, Inc. as a Server in Ohio and has been for approximately 15 years.

8. Pursuant to Buffets, Inc.'s policy and pattern or practice, Walter regularly spends more than 20% of her work time performing non-tip producing work such as washing dishes; cleaning floors; washing walls and service stations; emptying trash; cleaning light fixtures, blinds and picture frames; stocking food service stations; cleaning bus stations and glass storage areas; scrubbing chairs, table legs, furniture, glass racks, coffee pots and coffee machines; stocking glasses, cups, coffee, silverware, and napkins; making beverages, including ice teas and coffee, and maintaining cappuccino machines.

9. Walter regularly works before and after her shift for which Buffets, Inc. pays her nothing at all.

10. The uncompensated time that Walter works regularly results in her working more than 40 hours in a week.

11. Plaintiff Brown's written consent to be a party to this action is attached hereto.

12. Brown resides in Columbus, Ohio.

13. Brown was employed by Buffets, Inc. as a server in Ohio from

approximately December 1997 to August 2012.

14.     Pursuant to Buffets, Inc.'s policy and pattern or practice, Brown regularly spent more than 20% of her work time performing non-tip producing work such as cleaning floors; washing walls and service stations; emptying trash; checking and servicing restrooms; cleaning light fixtures, blinds and picture frames; stocking food service stations; cleaning bus stations and glass storage areas; scrubbing chairs, table legs, furniture, glass racks, coffee pots and coffee machines; stocking glasses, cups, coffee, silverware, and napkins; making beverages, including ice teas and coffee, and maintaining cappuccino machines.

15.     Brown regularly worked before and after her shift for which Buffets, Inc.'s paid her nothing at all.

16.     The uncompensated time that Brown worked regularly resulted in her working more than 40 hours in a week.

17.     Plaintiff Abston's written consent to be a party to this action is attached hereto.

18.     Abston resides in Gahanna, Ohio.

19.     Abston is employed by Buffets, Inc. as a server in Ohio and has been since approximately June 2003.

20.     Pursuant to Buffets, Inc.'s policy and pattern or practice, Abston regularly spends more than 20% of her work time performing non-tip producing work such as washing dishes; cleaning floors; washing walls and service stations; emptying trash; checking and servicing restrooms; cleaning light fixtures, blinds and picture frames;

4

stocking food service stations; cleaning bus stations and glass storage areas; scrubbing chairs, table legs, furniture, glass racks, coffee pots and coffee machines; stocking glasses, cups, coffee, silverware, and napkins; making beverages, including ice teas and coffee, and maintaining cappuccino machines.

21. Abston regularly works before and after her shift for which Buffets, Inc. pays her nothing at all.

22. The uncompensated time that Abston works regularly results in her working more than 40 hours in a week.

*The Defendant*

23. Defendant Buffets, Inc. is a privately held company with headquarters located at 1020 Discovery Rd., Ste. 100, Eagan, MN 55121.

24. Buffets, Inc. is the largest operator of buffet-style eateries in the US, with more than 400 locations in almost 40 states. It operates under the names HomeTown Buffet, Old Country Buffet, Ryan's Grill Buffet, Fire Mountain, and Country Buffet. The restaurants offer self-service buffets featuring entrees, sides, and desserts for an all-inclusive price.

25. During the past three years, Buffets, Inc. has employed two or more persons, including Plaintiffs, "engaged in commerce or in the production of goods for commerce," or has "had employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person," as defined in § 203(s)(1)(A)(i).

26. During the past three years, Buffets, Inc. has achieved annual gross volume

5

of sales made or business done in excess of $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

27. Defendant Buffets, Inc. was an enterprise engaged in commerce as that term is defined in 29 U.S.C. §203(s).

28. Buffets, Inc. employed Plaintiffs and participated directly in employment decisions regarding the Plaintiffs for which they seek redress in this case.

29. All actions and omissions described in this complaint were made by Buffets, Inc. directly or through its supervisory employees and agents.

## **JURISDICTION AND VENUE**

30. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

31. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

32. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

33. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to personal jurisdiction here.

## COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiffs bring FLSA claims, the First Cause of Action, on behalf of themselves and a class of similarly situated persons defined as:

> All persons who have worked for Buffets, Inc. as Servers between July 11, 2010 and the date of final judgment in this matter who worked as tipped employees earning a sub-minimum, tip credit wage rate (the "FLSA Collective").

35.     Buffets, Inc. is liable under the FLSA for, *inter alia*, failing to properly pay Plaintiffs and the FLSA Collective the minimum and overtime wages required under the FLSA.  Upon information and belief, there are many similarly situated current and former employees of Buffets, Inc. who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Buffets, Inc., are readily identifiable, and can be located through Buffets, Inc.'s records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring the Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who have worked for Buffets, Inc. in Ohio between July 11, 2010 and the date of final judgment in this matter who worked as tipped employees earning a sub-minimum, tip credit wage rate (the "Ohio Class").

37.     Excluded from the Ohio Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons

who will submit timely and otherwise proper requests for exclusion from the Ohio Class.

38. The persons in the Ohio Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

39. Upon information and belief, the size of the Ohio Class is at least 60 workers.

40. Defendant acted or refused to act on grounds generally applicable to the Ohio Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

41. The Second Cause of Action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Ohio Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a. whether Defendant had a policy of relying on a tip credit to ensure payment of minimum wage to Servers performing non-tip producing duties;

    b. whether Defendant had a policy or practice of assigning plaintiffs and the members of the class to perform non-tip producing duties more than 20% of their time;

    c. whether Defendant's policy or practice of claiming a tip credit for workers who spent more than 20% of their time performing non-tip producing duties violated the OMFWSA;

   d. whether Defendant had a policy or practice of not recording work Servers performed before and after their scheduled work time;

   e. whether Defendant's policy of not recording work Servers performed before and after their scheduled work time resulted in violations of the OMFWSA; and

   f. whether Defendant's violation of the OMFWSA was willful.

   g. whether Defendants failed to keep true and accurate time records for all hours worked by the Ohio Class;

   h. what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

   i. the nature and extent of Ohio Class-wide injury and the appropriate measure of damages;

  42. Plaintiffs' claims are typical of the claims of the Ohio Class they seek to represent.  Plaintiffs and the Ohio members work or have worked for Defendant and have been subjected to their policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week and failing to pay wages for all hours worked.  Defendant acted and refused to act on grounds generally applicable to the Ohio Class, thereby making declaratory relief with respect to the Ohio Class appropriate.

  43. Plaintiffs will fairly and adequately represent and protect the interests of the Ohio Class.  They understand that, as a class representative, they assume a fiduciary responsibility to the Ohio Class to represent its interests fairly and adequately.  Plaintiffs recognize that as a class representative, they must represent and consider the interests of

9

the Ohio Class just as they would represent and consider their own interests. They understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor his own interests over those of the Ohio Class. They recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Ohio Class. Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

44. Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

45. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Ohio Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Ohio Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## CLASS-WIDE FACTUAL ALLEGATIONS

46. Buffets, Inc. employed the Plaintiffs, the FLSA Collective, and the Ohio Class members as Servers.

47. Servers' job duties are to greet customers, tell them about featured foods and Buffets, Inc. promotions, check on them throughout their meals and address their needs, keep tables clear, and thank customers when they are done and clean and reset the table.

48. For doing this work, Buffets, Inc. paid the Servers an hourly rate less than the full minimum wage required by Ohio law and the FLSA by taking a tip credit against the Server's pay.

49. The hourly rate Buffets, Inc. paid Servers was typically less than $4.00 per hour.

50. Beginning approximately three years ago, Buffets, Inc. instituted a corporate-wide staffing policy called the "Matrix" that limited the labor cost restaurants could incur. The Matrix policy limited labor costs in each restaurant based on a formula applied to the restaurant's sales. The Matrix policy applied to all restaurants and Buffets, Inc. required management to adhere to it.

51. Through the Matrix policy, Buffets, Inc. forced managers to cut labor costs at restaurants even where staffing was so thin that accomplishing the work needed was already difficult even before the Matrix policy took effect.

52. Through the Matrix policy, Buffets, Inc. forced restaurants to cut staff who performed non-tip producing work such as washing dishes, cleaning, and setting up,

11

stocking, maintaining, and cleaning the buffet line. On information and belief these staff were paid hourly rates equal to or exceeding the FLSA and Ohio minimum wage.

53. Because the non-tip producing work previously performed by the laid off workers still had to be performed, Servers—all of whom were paid less than $4.00 per hour--were assigned these non-tip producing duties in addition to non-tip producing work already assigned to them. In that way, Buffets, Inc. cut its labor costs on the work by half.

54. The non-tip producing work Servers are required to do includes washing dishes; cleaning floors; washing walls and service stations; emptying trash; checking and servicing restrooms; cleaning light fixtures, blinds and picture frames; stocking food service stations; cleaning bus stations and glass storage areas; scrubbing chairs, table legs, furniture, glass racks, coffee pots and coffee machines; stocking glasses, cups, coffee, silverware, and napkins; making beverages, including ice teas and coffee, and maintaining cappuccino machines (hereafter referred to as "Non-Tip Producing Tasks").

55. Servers, including Walter, Brown, and Abston, are required to spend significantly more than 20% of their work time doing these Non-tip Producing Tasks.

56. In order to perform the Non-Tip Producing Tasks assigned to them, Servers were required to work longer hours than they had prior to the Matrix policy.

57. Buffets, Inc. corporate management was aware that Servers were being assigned Non-Tip Producing Tasks that occupied more than 20% of their time as a result of the Matrix policy.

58. The Matrix policy also resulted in Servers not being compensated for all of

12

their work time.

59.    Meeting the Matrix policy's labor cost constraints required adherence to scheduled staffing hours. Servers could not work more than their scheduled hours when doing so would result in more labor cost than the Matrix allowed.

60.    The strict clocking-in policy instituted as a result of the Matrix policy forced Servers to perform many of the Non-Tip Producing Tasks assigned to them before and after their scheduled work time. Because of the strict clocking –in and out policy, Non-Tip Producing work performed before and after Servers' scheduled shifts was uncompensated and regularly resulted in working more than 40 hours in a week.

61.    Walter, Brown, and Abston regularly performed uncompensated work outside their scheduled time and that work regularly resulted in working more than 40 hours in a week.

62.    Buffets, Inc. uses a computerized labor scheduling and time and attendance system by Time Management Corp. that Servers are required to punch into and out to record their work time.

63.    Under Buffets, Inc.'s clocking-in policy, the time clock automatically registers the Servers' scheduled time to begin work regardless of when the Server actually punches in and begins work. The work between when the Server began work and the start of her scheduled time goes uncompensated.

64.    Walter, Brown, and Abston all regularly punched their time clock and began work before their scheduled shift time only to have their time card reflect their scheduled start time.

13

65. Servers were also required to stay past their scheduled shift time to perform many of the Non-Tip Producing Tasks assigned to them. Due to the strict requirements of the Matrix policy, they were required to punch out when their shift ended and then finish their work. If they attempted to punch out after their shift ended, the time clock required a manager's approval to accept the time. Managers would routinely refuse to approve the additional time because the extra time would violate Buffets, Inc.'s Matrix policy. The work between the end of their scheduled shift and when they actually finished working was uncompensated.

66. Walter, Brown, and Abston all regularly punched out at their scheduled shift end only to continue work. When they did that, Buffets, Inc. did not compensate them for the time they spent working after their scheduled shift time ended.

67. As a result of Buffets, Inc.'s policies and practices, Servers are not paid the minimum wage required by Ohio law and the FLSA.

68. Buffets, Inc. was aware or should have been aware that its Matrix policy resulted in Servers spending more than 20% of their work time on Non-Tip Producing Tasks .

69. Buffets, Inc.'s was aware or should have been aware that its Matrix policy results in Servers working hours for which they are not compensated, including overtime hours.

70. Buffets, Inc.'s unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the Class Members.

14

71. Buffets, Inc. is aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Class Members, the minimum and overtime wages required by Ohio wage-and-hour law and the FLSA.

72. Upon information and belief, Buffets, Inc. applies the same unlawful policies and practices to Servers throughout the 40 states in which it employs them.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act: Failure to Pay Minimum and Overtime Wages on Behalf of Plaintiffs and the FLSA Collective

73. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

74. The foregoing actions of Buffets, Inc. violated the rights of Plaintiffs and other similarly situated workers to minimum wage and overtime as guaranteed by the FLSA, 29 USC 206 and 207.

75. Plaintiffs and other similarly situated workers are entitled to relief for these violations pursuant to 29 USC 216(b), including their unpaid minimum and overtime wages, an equal amount of liquidated damages, reasonable attorneys' fees, and litigation costs.

## SECOND CAUSE OF ACTION
### Ohio Minimum Fair Wage Standards Act ("OMFWSA") on Behalf of Plaintiffs and the Ohio Class Members

76. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

77. The foregoing actions violated rights under the OMFWSA.

78. 2. Plaintiffs and the members of the Ohio class are entitled to relief

15

pursuant to the OMFWSA, Ohio Rev. Code § 4111.01 *et seq.*, and its implementing regulations, and the OH Const. Art. II, § 34a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

    A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action and that Buffets, Inc. provide Plaintiffs with names, addresses, telephone numbers, and other contact information, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit been employed by Buffets, Inc. and who fall within the FLSA Collective described in this Complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages; and

    B.    Unpaid wages, an additional and equal amount as liquidated damages, interest, attorneys' fees, costs (including expert fees), and other compensation pursuant to 29 U.S.C. § 201 *et seq*.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Ohio Class they seek to represent, prays for the following relief:

    A.    Certification of this action as a class action pursuant to FRCP 23;

    B.    Designation of Plaintiffs as Class Representatives;

    C.    A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

        D.      Appropriate equitable and injunctive relief to remedy Buffets, Inc.'s violations of state law, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

        E.      An award of damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendant according to proof;

        F.      Pre-Judgment and Post-Judgment interest, as provided by law;

        G.      Such other injunctive and equitable relief as the Court may deem just and proper; and

        H.      Attorneys' fees and costs of suit, including expert fees and costs.

Dated:      October 17, 2013

                Respectfully submitted,

                s/Rachhana T. Srey
                Rachhana T. Srey, MN Bar No. 340133
                NICHOLS KASTER
                4600 IDS Center, 80 S. 8th St.
                Minneapolis, MN 55402
                Phone: 612-256-3200
                Fax: 612-215-6870
                Email: srey@nka.com

                David A. Young*
                THE LAW FIRM OF DAVID A. YOUNG, LLC
                The Hoyt Block Building
                700 West St. Clair Avenue, Suite 316
                Cleveland, Ohio 44113
                Phone: (216) 621-5100
                Fax: (216) 621-7810
                Email: dyoung@davidyounglaw.com

                Michael J.D. Sweeney*
                GETMAN & SWEENEY, PLLC


9 Paradies Lane
New Paltz, NY 12561
Phone: (845) 255-9370
Fax: (845) 255-8649
Email: msweeney@getmansweeney.com

**Attorneys for Plaintiff and the Putative Class**

**\*** (*pro hac vice* application forthcoming)