# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Lynn Walter, Lynn Brown, Kathlene Abston, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 6:13-cv-02995-JMC ) ) |
| v. | ) **ORDER AND OPINION** ) |
| Buffets Inc., d/b/a HomeTown Buffets, Old Country Buffet, Fire Mountain, Country Buffet, Ryan's, | ) ) ) ) |
| Defendant. | ) ) ) |

Plaintiffs Lynn Walter, Lynn Brown, and Kathlene Abston, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), filed this collective action alleging violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201-219 and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (ECF No. 99.) This matter is before the court on Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action (ECF No. 60) and Motion to Narrow the Scope of the FLSA Class (ECF No. 118).

For the reasons set forth herein, the court thereby **GRANTS** Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action (ECF No. 60) and **DENIES** Plaintiffs' Motion to Narrow the Scope of the FLSA Class (ECF No. 118).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant Buffets, Inc., known since October 30, 2013, as Buffets, Inc. d/b/a Ovation Brands ("Defendant"), operates buffet-style restaurants under five brands: HomeTown Buffet, Ryan's, Old Country Buffet, Fire Mountain, and Country Buffet. (ECF No. 65 at 1 n.1.) Defendant operates more than 300 restaurants in 35 states. (ECF No. 60-1 at 2; *see also* About

1

Ovation Brands, *available at* http://news.ovationbrands.com/about/ (last visited June 25, 2015).) Plaintiffs are current or former employees at the HomeTown Buffet on Chantry Drive in Columbus, Ohio, working as servers earning a sub-minimum, tip-credit wage. (ECF Nos. 99 at 3-5, 60-3 at 2, 60-4 at 2, 60-9 at 2.)

Plaintiffs filed their original Complaint on October 17, 2013, in the District of Minnesota with the understanding Defendant's corporate offices were located within that district. (ECF No. 60-1 at 8; *see* ECF Nos. 1, 21.) Defendant moved, unopposed, to transfer the case to this district, noting its principle place of business is in South Carolina. (ECF No. 14 at 5; *see also* ECF No. 12.) The case was formally transferred to this court on November 4, 2013. (ECF No. 21.)

Defendant filed a Motion to Dismiss on November 13, 2013. (ECF No. 22.) In response, Plaintiffs filed leave to amend the Complaint, which the court granted on February 14, 2014. (ECF Nos. 34, 45, 47.) Plaintiffs have since amended the Complaint a second time. (ECF No. 99.)

In the Second Amended Complaint, Plaintiffs allege that due to corporate policy instituted in approximately 2011, Defendant limited labor costs each restaurant could incur, resulting in servers being assigned significant amounts of non-tip-producing work for which they should have been paid the standard minimum wage, but were paid at tip-credit rates. (ECF No. 99 at 11-12.) Further, Plaintiffs allege that Defendant's strict policy that workers adhere to scheduled hours forced servers to perform many non-tip-producing tasks before and after their scheduled shifts for which they were not paid. (*Id.* at 13-14.) Plaintiffs Walter and Abston also allege their work hours have been "drastically reduced" in retaliation for filing this case. (*Id.* at 15-16.)

On May 8, 2014, Plaintiffs filed a Motion to Conditionally Certify a FLSA Collective

Action, requesting the court conditionally certify a class defined as:

> All persons who have worked for Buffets, Inc. as Servers between July 11, 2010[1] and the date of final judgment in this matter who worked as tipped employees earning a sub-minimum, tip credit wage rate.

and authorize Plaintiffs to issue notice to similarly situated employees of Defendant informing them of their right to opt into this action. (ECF No. 60-1 at 6.) Defendant moved to stay Plaintiffs' motion to allow for a 90-day period to conduct discovery regarding Plaintiffs' allegations. (ECF Nos. 65, 66.) On June 27, 2014, the court granted Defendant's motion, allowing the requested 90 days, and requiring Defendant respond to Plaintiffs' motion within 21 days following the limited discovery period. (ECF No. 76.) The court granted an extension of

---

[1] In their Reply Brief in Support of Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action, Plaintiffs amended the date to July 18, 2012, due to Defendant's bankruptcy filings, "limit[ing] the class to post-bankruptcy claims." (ECF No. 113 at 4.) Defendant notes in its Memorandum in Opposition to Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action that "as a matter of federal bankruptcy law, Plaintiffs and the putative class are precluded from asserting any claims or collecting any damages against [Defendant] that arose prior to the Effective Date of the [bankruptcy reorganization] Plan (*i.e.*, July 18, 2012)." (ECF No. 101 at 33.) Article VIII.F of Defendant's bankruptcy reorganization plan states, in part, "all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors or the Litigation Trustee, with respect to any such Claim." (*Id.* at 32 n.15.) Under 11 U.S.C. § 1441(d)(1), "confirmation of a plan--(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan." A claim is "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). As Defendant points out, "Numerous courts have held that claims by employees against employer-debtors for damages arising from pre-confirmation conduct are subject to the discharge under the Bankruptcy Code." (ECF No. 101 at 33, citing *O'Loghlin v. County of Orange,* 229 F.3d 871, 874 (9th Cir. 2000); *McSherry v. TWA,* 81 F.3d 739, 740-41 (8th Cir. 1996); *In re US Airways, Inc.,* 365 B.R. 624, 628-29 (E.D. Va. 2007) *reversed in part on other grounds by Holcombe v. US Airways, Inc.,* 369 Fed. App'x 424 (4th Cir. 2010); *Morrow v. Green Tree Servicing, L.L.C.,* 360 F. Supp. 2d 1246, 1248-49 (M.D. Ala. 2005). Thus, the court will consider the proper starting date of the class to be July 18, 2012.

the discovery period (ECF No. 85), and Defendant filed a Memorandum in Opposition to Plaintiff's Motion on November 7, 2014, arguing that information obtained through discovery "highlights the differences [among Plaintiffs and potential class members] that make conditional certification inappropriate" (ECF No. 101 at 2).

On March 18, 2015, Plaintiffs filed a Motion to Narrow the Scope of the FLSA Class. (ECF No. 118.)  Citing Defendant's current "tenuous" financial situation, Plaintiffs propose to narrow the class to those within the original class definition, but limited to servers who worked at restaurants overseen by 11 named area directors "and their predecessors and successors."  (*Id.* at 1-2.)  Defendant opposes the redefined class, arguing that with this change in class definition and an early alteration of the date in the definition, "Plaintiffs' class definition is a moving target that has not only prejudiced [Defendant], but also proves the core issue—that Plaintiffs' request for conditional certification should be denied."  (ECF No. 120 at 1.)

## II.  JURISDICTION

This court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiffs bring claims under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and thus their claims arise under a law of the United States and are properly heard in this court.  Further, 28 U.S.C. § 1337(a) states that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints… only if the matter in controversy… exceeds $10,000, exclusive of interest and costs."

The court also has jurisdiction over this class action pursuant to 28 U.S.C. § 1332. "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which… any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332 (d)(2)(A).

The court may also properly hear Plaintiffs' state law claims under OMFWSA under supplemental jurisdiction. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

### III. LEGAL STANDARD AND ANALYSIS

Under the FLSA, employers must pay employees covered by the law a designated minimum wage, as well as overtime compensation when a covered employee works more than forty hours in one work week. 29 U.S.C. §§ 206-207. An employer may pay workers less than the standard minimum wage if the workers are "tipped employees" and the amount paid in wages plus the employee's tips equals at least the standard minimum wage. 29 U.S.C. § 203(m). Employees who earn tip-credit wage may receive this wage for time spent on non-tip-producing tasks, such as maintenance and preparatory or closing activities, "provided such duties are incidental to the regular duties" of the worker and are generally assigned to that type of worker. Department of Labor Field Operations Handbook § 30d00(e). If time spent on these incidental non-tip-producing duties exceeds 20 percent of an employee's time worked, tip credit may not be taken and the employee must be paid at least the standard minimum wage for the time spent on those tasks. *Id.*

Under the FLSA, a plaintiff may institute a collective action against their employer on their own behalf and on behalf of other employees. Certification of a collective action under the FLSA is governed by 29 U.S.C. § 216(b), which provides as follows:

> An action to recover . . . [unpaid wages] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

Certification of a collective action under § 216(b) is generally approached as a two-step process. *See, e.g., Purdham v. Fairfax Cnty. Pub. Schs.,* 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009) (noting that "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action"). First, the court determines whether the potential plaintiffs are "similarly situated." *Id.* at 548. At this stage, typically referred to as the "notice stage," "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 n.2 (11th Cir. 2003). To demonstrate the plaintiffs in a putative class are similarly situated, the representative plaintiff "must make only a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden [at this stage] is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (internal quotations and citations omitted). If the court finds that the proposed collective action members are similarly situated, the court conditionally certifies the collective

6

action, giving putative collective action members notice and the opportunity to opt in. *Purdham,* 629 F. Supp. 2d at 547.

"After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to 'decertify' the class. At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" *Id.* (citation omitted). At this stage, if the court finds that the plaintiffs are similarly situated, the collective action may proceed to trial. *Scholtisek,* 229 F.R.D. at 387. If the court finds the members of the class are not similarly situated, the court decertifies the collective action and the claims of those who opted in are dismissed without prejudice. *Id.* The original named plaintiffs may then proceed to trial on their individual claims. *Id.*

**A. Conditional Certification**

At this stage, Plaintiffs' burden is minimal to prove the members of the putative class are similarly situated and that notice to allow potential class members to opt in is warranted. *See Scholtisek,* 229 F.R.D. at 387. "When sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, however, a court can collapse the two stages of the analysis and deny certification outright." *Purdham,* 629 F. Supp. 2d at 547 (citation omitted).

Although the parties have engaged in some discovery, neither party has contended that discovery has been substantial in scope nor that it is largely complete. As such, the court does not have sufficient information to skip the initial "notice" step of FLSA class certification, and thus the more lenient standard is appropriate at this conditional certification stage. *See Curtis v. Time Warner Entm't-Advance/Newhouse P'ship,* 2013 WL 1874848, at *3-4 (D.S.C. May 3, 2013); *Fast v. Applebee's Int'l, Inc.,* 243 F.R.D. 360, 363 (W.D. Mo. 2007).

With some discovery having been conducted in this case, Defendant appears to take a similar approach as the defendant in *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship,* who argued the court should adopt an "intermediate" standard when determining whether to conditionally certify a class. 2013 WL 1874848 at *3. Defendant argues several factual distinctions among Plaintiffs and potential class members and offers statements to rebut Plaintiffs' allegations of a corporate policy encouraging the alleged violations. (*See* ECF No. 65.) "To be similarly situated, however, class members need not be identically situated." *Fast,* 243 F.R.D. at 363 (citation omitted). Unlike a class action suit under Federal Rule of Civil Procedure 23, in which class members must opt out or be bound by the outcome, members of a class action under the FLSA must opt in. *See Boyle v. Barber & Sons, Co.,* 2004 WL 5897946, at *3 (W.D. Mo. May 21, 2004). Thus, because the two-step procedure allows not only for extensive discovery after a class is conditionally certified but for the parties to see the actual makeup of the class as parties opt in, decisions made on distinctions among *potential* class members at this stage are premature and these distinctions do not serve as a bar against conditional certification.

Further, just as the court noted in *Curtis,* "[a]t this stage of the litigation… the court's role is not to resolve factual disputes or to make credibility determinations. Here, it is sufficient that Plaintiffs have shown that other similarly situated plaintiffs exist." 2013 WL 1874848 at *6. Similarly, Plaintiffs here have made such a showing.

Plaintiffs have provided affidavits that support the allegations in the Complaint from eight servers who have worked in HomeTown Buffet and Ryan's locations in six different states. (*See* ECF Nos. 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 60-10.) Four of the affidavits attest to conversations with managers about corporate-level policies that resulted in the alleged violations.

(ECF Nos. 60-5 at 6-7, 60-6 at 6, 60-7 at 6, 60-8 at 6.)  In her declaration, Katherine Howell, who worked as a server at the Ryan's location in Pensacola, Florida, stated she had read corporate e-mails regarding cutting employee hours and labor costs.  (ECF No. 60-5 at 6.)  In addition, Plaintiffs have provided copies of the "Server Opening Duties Checklist" and "Line Server Opening Beverage Bar Duties" checklist for Old Country Buffet, HomeTown Buffet, and Country Buffet, which list a number of non-tip-producing duties that servers are required to perform.  (ECF Nos. 60-16, 60-17.)  These affidavits provide ample evidence for Plaintiffs to meet the modest showing required to conditionally certify a class under § 216(b).  *See Curtis,* 2013 WL 1874848, at *5 (testimony regarding policy of "reconciling sales" off the clock was noted as being "some evidence that there was at least an informal policy" of the encouraging off-the-clock work and e-mails from a regional director "further corroborate[d]" the allegations); *McGregor v. Farmers Ins. Exch.*, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011) ("If plaintiffs had provided even 'modest factual support' of an unwritten policy contradictory to [defendant]'s stated policy to pay employees for overtime, collective treatment might be appropriate."); *Ervin v. OS Restaurant Servs., Inc.,* 2009 WL 1904544, at *4 (N.D. Ill. July 1, 2009), *reversed on other grounds by Ervin v. OS Restaurant Servs., Inc.,* 632 F.3d 971 (7th Cir. 2010) ("While the testimony of three former employees is not overwhelming, it is sufficient to make a modest factual showing of a common policy."); *Mancia v. Mayflower Textile Servs. Co.,* 2008 WL 4735344, at *3 (D.Md. Oct. 14, 2008) (conditionally certifying a class when a supervisor told one plaintiff that it was against the company's policy to pay overtime).

**B. Scope of the Class**

Having determined that conditional certification is appropriate in this case, the scope of the class must now be determined.  Plaintiffs propose to narrow the class to include only those

servers who worked at restaurants overseen by 11 named area directors "and their predecessors and successors." (ECF No. 118 at 1-2.) Plaintiffs argue that Defendant's financial condition warrants narrowing the class and that the proposed narrowed class would be more efficient. (*Id.* at 2.) However, just as Defendant's attempts to argue factual distinctions among potential class members was premature, narrowing the class before the parties even know what potential plaintiffs, and how many, choose to opt in is also premature.

However, the court does find that the proposed definition, as originally defined, requires some alteration. "Many circuits have held that the court itself may construct a definition of the class, or may modify a proposed definition where the original is inadequate." *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 64 (D. Nev. 1985) (citations omitted); *see also Mueller v. CBS, Inc.,* 201 F.R.D. 425, 429 (discussion of class definition modifications for conditional certification under the FLSA, citing Rule 23 case law: "A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.") (citation omitted); *Stransky v. HealthONE of Denver, Inc.,* 2012 WL 6548108, at *5 (D. Colo. Dec. 14, 2012) (FLSA conditional certification under class definition modified *sua sponte*); *Thorn v. Jefferson-Pilot Life Ins. Co.,* 2004 WL 5745993, at *1 (D.S.C. Dec. 2, 2004) (court considered, *sua sponte*, narrowing the class definition prior to certification, but found the narrowed class could still not be certified).

At this point in the process when the number of parties who will choose to opt in remains speculative, the court's concern is not with narrowing the scope of the class due to concerns such as the those Plaintiffs have with Defendant's financial status. The court's concern is to ensure the scope of the class properly defines those with a cognizable injury. *See Brooks v. GAF Materials Corp.,* 2012 WL 5195982, at *4 (D.S.C. Oct. 19, 2012); *Metro. Area Hous. Alliance v.*

10

*U.S. Dep't of Hous. and Urban Dev.,* 69 F.R.D. 633, 637-38 (N.D. Ill. 1976). As Defendant makes known through declarations from 52 employees, there exist a number of employees who state they did not work off-the-clock (ECF No. 101-1 at 4-8) and that their "side work is not significant" (*Id.* at 29-31), among other statements refuting Plaintiffs' allegations (*see id.*). However, the fact that there exist some employees who did not allege they experienced work conditions in violation of the FLSA does not necessarily mean a class of employees does not exist who *did* experience such alleged violations, and thus is not fatal to conditional certification. With this in mind, the court will conditionally certify the class under the following definition:

> All persons who have worked for Buffets, Inc., also known as Ovation Brands, as servers between July 18, 2012, and the date of final judgment in this matter who worked as tipped employees earning a sub-minimum, tip-credit wage and (1) performed non-tip-producing duties totaling 20 percent or more of their time worked for which they were not paid the standard, non-tip-credit minimum wage and/or (2) performed work duties off-the-clock for which they were not paid.

This narrowed definition addresses Defendant's arguments that under the broad definition, "Plaintiffs must show that *all* Servers performed too much non-tip-producing work at the tip credit rate, and that *all* Servers were victims of a uniform departure from [Defendant's] lawful policy prohibiting off-the-clock work." (ECF No. 101 at 1 (emphasis in original); *see also* ECF No. 120 at 8.) The class, instead, will focus on those parties who allege the same violations as outlined in the Complaint. Now that the class is more narrowly defined and parties will soon begin to opt in, the parties can focus discovery more specifically. Any further concerns with the class definition can better be addressed once discovery is largely complete. At that point, the parties may move to decertify, narrow, or redefine the class as necessary.

**C. Notice and potential class member information**

As Defendant appeared to focus its arguments on its position that the court should not

11

conditionally certify the class, Defendant offers no objections to Plaintiffs' proposed notice form and reminder card to be sent to potential class members to allow them to opt in. (*See* ECF Nos. 60-14, 60-15.) Further, Defendant does not offer argument regarding Plaintiffs' request for potential class members' contact information, proposed contact methods, or notice posting requests. (*See* ECF No. 60-1 at 19-24.)

Due to the court's modification of the class definition and the absence of any objections in the record from Defendant regarding the proposed notice forms, method, posting requirements, or information requests, Plaintiffs' proposed forms, and potentially the proposed methodology, will require some alteration. Therefore, the parties have thirty (30) days from the issuance of this order to submit agreed proposed notice forms and methodology, or, if they cannot agree, to submit proposed notice forms and methodology with arguments and objections to the court.

## IV. CONCLUSION

Based on the aforementioned reasons, it is therefore ordered that Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action (ECF No. 60) is **GRANTED** and Plaintiffs' Motion to Narrow the Scope of the FLSA Class (ECF No. 118) is **DENIED**. The parties have thirty (30) days from the issuance of this order to submit agreed proposed notice forms and methodology, or, if they cannot agree, to submit proposed notice forms and methodology with arguments and objections to the court.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 25, 2015
Columbia, South Carolina